No. 13844

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

---

STATE OF MONTANA, ex rel. THEODORE NELSON,

Relator,

-vs-

THE DISTRICT COURT OF THE SECOND JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND FOR
THE COUNTY OF SILVER BOW, AND THE HON. JAMES
D. FREEBOURN, PRESIDING JUDGE,

Respondent.

---

ORIGINAL PROCEEDING:

Counsel of Record:

For Relator:

Henningsen, Purcell & Genzberger, Butte, Montana
Rex F. Henningsen argued and John Jardine argued,
Butte, Montana

For Respondent:

Hon. Mike Greely, Attorney General, Helena, Montana
John G. Winston, County Attorney, Butte, Montana
Craig Phillips argued, Deputy County Attorney,
Butte, Montana

---

Submitted: June 22, 1977

Decided: JUL 26 1977

Filed: JUL 26 1977

Thomas J. Kearney
Clerk

No. 13855

IN THE SUPREME COURT OF THE STATE OF MONTANA

1977

STATE ex rel. JOHN G. WINSTON,
County Attorney,

Plaintiff and Appellant,

-vs-

THE DISTRICT COURT OF THE SECOND JUDICIAL
DISTRICT OF THE STATE OF MONTANA, IN AND
FOR THE COUNTY OF BUTTE-SILVER BOW, AND THE
HONORABLE JAMES D. FREEBOURN, PRESIDING JUDGE,

Respondent.

ORIGINAL PROCEEDING:

Counsel of Record:

For Appellant:

Hon. Mike Greely, Attorney General, Helena,
Montana
John G. Winston, County Attorney, Butte, Montana
Craig Phillips argued, Deputy County Attorney,
Butte, Montana

For Respondent:

Henningsen, Purcell and Genzberger, Butte, Montana
Rex F. Henningsen argued and John Jardine argued,
Butte, Montana

Submitted: June 22, 1977

Decided: JUL 26 1977

Filed: JUL 26 1977

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Defendant Theodore Nelson, charged with the crime of deliberate homicide, and the state of Montana, by John G. Winston, County Attorney, Silver Bow County, petition for separate writs of supervisory control. Because petitioners are adversaries in the same criminal proceeding, the issues raised by these petitions were combined for argument before this Court and both will be decided pursuant to this opinion.

On January 4, 1977 an Information was filed in the district court, Silver Bow County, charging defendant with deliberate homicide under section 94-5-102(1)(a), R.C.M. 1947. Defendant plead not guilty and filed a timely notice of intent to rely on the affirmative defense of mental disease or defect. He was admitted to bail after examination by William N. Alexander, M.D., whom defendant had hired to conduct such examination. On January 17, 1977, pursuant to stipulation of counsel, the district court ordered defendant be admitted to Warm Springs State Hospital for psychiatric examination and evaluation in accordance with section 95-505, R.C.M. 1947. Defendant was examined again by Dr. Alexander in his capacity as Clinical Director and Chief of Forensic Medicine at the Montana State Hospital at Warm Springs. Dr. Alexander submitted his report to the court on April 6, 1977. The report stated, in pertinent part:

> "Patient is aware of the nature of the charges against him and is able to assist his lawyer in his own defense. He is also able to appreciate the criminality of the charges. At the time of the incident which led to the present charges it is felt that the patient was unable to conduct himself according to the requirements of the law because he had reached the climax of a severe adjustment reaction which had temporarily assumed psychotic proportions. At that point he was unable to have a particular state of mind which is an element of the offense charged.* * *"

Upon receipt of this report defendant filed a motion for acquittal by reason of mental disease or defect, and a hearing was held. At the hearing Dr. Alexander testified in his opinion defendant was unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law at the time of the killing. The state called no rebuttal witnesses, but cross-examined Dr. Alexander extensively regarding the factual basis for his diagnosis and the subjective nature of a psychological examination. Dr. Alexander stated his diagnosis was based upon the facts surrounding the incident as related to him by defendant, and while he thought defendant was telling the truth, his diagnosis could change if the facts were not as defendant claimed them to be. He also stated it was possible, though unlikely, that his opinion would be disputed by his colleagues.

The district court found:

> "That the question of whether defendant was aware
> or unaware of his actions or whether he was able
> or unable to have a particular state of mind at
> the designated moment is disputable".

The court denied the motion for acquittal.

Did the district court err in denying defendant's motion for acquittal? Defendant argues that under section 95-503(a), R.C.M. 1947, he need only prove mental disease or defect excluding responsibility by a preponderance of the evidence, and the only evidence before the court, the testimony of Dr. Alexander, clearly establishes this proof.

The structure for the procedure in question is set out in section 95-507(1), R.C.M. 1947:

> "If the report filed under section 95-505 finds that
> the defendant at the time of the criminal conduct
> charged suffered from a mental disease or defect
> which rendered him unable to appreciate the criminality
> of his conduct or to conform his conduct to the
> requirements of law, and the court, after a hearing
> if a hearing is requested by the attorney prosecuting
> or the defendant, is satisfied that the mental disease

or defect was sufficient to exclude responsibility, the court on motion of the defendant shall enter judgment of acquittal on the ground of mental disease or defect excluding responsibility."

This Court has previously discussed the purpose of section 95-507(1). In State ex rel. Krutzfeldt v. District Court, 163 Mont. 164, 170, 515 P.2d 1312, the Court noted:

"* * * the Revised Commission Comment to section 95-507, R.C.M. 1947, in regard to subdivision (a), states in part:

"'Under subdivision (a) in cases of extreme mental disease or defect where the exclusion of responsibility is clear, trial can be avoided and the defendant immediately committed as irresponsible.'

"That comment makes it clear that if, in the judge's opinion and after a hearing if requested by either attorney, a defendant was clearly suffering from mental disease at the time of the crime then the judge can acquit the defendant and have him committed to a state institution forthwith. The purpose is plain--to avoid a costly trial where the mental defect is plain and obvious.* * *"

At this stage of the process, then, the question is not one of the preponderance of the evidence, but whether the exclusion of criminal responsibility due to mental disease or defect is "plain and obvious". If it is not plain and obvious, a trial should be conducted and the trier of fact can determine the preponderance of the evidence. The summary procedure outlined by section 95-507 was never designed to replace the trial where the issue of criminal responsibility is disputable. In Krutzfeldt this Court held this procedure does not preclude a defendant from raising the defense of mental disease or defect at trial. Such a holding would be unnecessary if the standard of proof at the hearing was equivalent to the standard at trial.

Defendant argues he is entitled to acquittal as a matter of law under the authority of State ex rel. Main v. District Court, 164 Mont. 501, 525 P.2d 28. Main is deceptively similar to the instant case, but there are critical differences. In Main,

-4-

relator filed a motion to dismiss on the grounds of mental disease or defect and a hearing was held under section 95-507, R.C.M. 1947. Dr. M. F. Gracia testified relator was not responsible at the time of the criminal conduct charged. The only doubt was cast by another psychiatrist, Dr. Moisey, who testified that, in his opinion, relator was not so mentally disturbed he did not know what he was doing. However, he admitted he was unable to determine relator's state of mind at the time of the incident, and this Court held Dr. Moisey's testimony was thereby rendered incompetent and thus raised no factual issue. There was no doubt cast upon the testimony of Dr. Gracia, except for the incompetent testimony of Dr. Moisey, so relator was entitled to an acquittal as a matter of law. We noted the persuasive basis for Dr. Gracia's opinion in Main:

> "* * * Dr. Gracia based his opinion on (1) an examination of relator several weeks after the alleged crime; (2) upon extensive psychological testing and medical examination including observation by staff personnel every day for several years; (3) upon the study of relator's social history and history of mental illness dating back to 1962; and (4) the doctor's personal contact with relator beginning in 1966." 164 Mont. 509

In the instant case, by contrast, Dr. Alexander based his opinion on his examination of defendant which lasted six to seven hours in total. While we do not doubt this is adequate for a complete and thorough psychiatric examination, it is a fact Dr. Alexander's findings were largely based on the facts of the occurrence as related to him by defendant. The alleged temporary insanity was admittedly of short duration, and Dr. Alexander testified his diagnosis could change if the facts were not in accord with defendant's version of the incident. For example, this colloquy occurred between the county attorney and Dr. Alexander on cross-examination:

"Q. But the question is anyway, the question: Your opinion would change if you knew he had a loaded gun before he got there?  A.  Yes, sir.

"Q.  And he's the only one that told you that. You don't know the facts of that do you?  A. I do not."

We did not hold in Main, and do not intend to hold, that the district judge is absolutely bound by the opinion of an expert testifying on the ultimate issue of mental disease or defect.  We do not believe the statute intended to make the examining psychiatrist into the trier of fact.  While State v. Taylor, 158 Mont. 323, 335, 491 P.2d 877, dealt with the release of a defendant from commitment after his sanity was allegedly restored, the reasoning there with regard to the opinion testimony of experts is applicable:

> "While the determination of defendant's mental condition and his expected behavior, if released, must be on the basis of expert testimony, the trial court could weigh such opinion evidence but he is not bound by it.  He could reject it if, in his judgment, the reasons given for the testimoney were unsound." 158 Mont. 335

In the instant case, while the opinion of Dr. Alexander is uncontradicted by any other testimony, the district judge could properly have found his opinion was based upon determinations of fact which were for a jury to determine.  Therefore, the existence of mental defect at the time of the incident was not so "plain and obvious" as to require an acquittal at this stage of the proceeding.  Accordingly, the district court's denial of defendant's motion for acquittal is affirmed.

The state in its application for a writ of supervisory control alleges that the trial court abused its discretion by its denial of the state's motions for:  (1) The examination of defendant by another psychiatrist; (2) the listing of additional witnesses on the Information; and (3) a continuance until July 15, 1977, due to the unavailability of key witnesses.  The continuance issue

-6-

would appear to be moot at this time and will not be discussed.

Defendant argues the issues raised by the state do not fall within section 95-2403, R.C.M. 1947, governing the scope of appeal by the state in a criminal case. An application for a writ of supervisory control before this Court is an original proceeding and not an appeal. Jurisdiction is not denied by the fact the relator has no right to an appeal. Defendant's jurisdictional argument is without merit.

The state seeks an examination of defendant by another qualified psychiatrist under the authority of section 95-507(2), R.C.M. 1947:

> "When either the defendant or the state wishes the defendant to be examined by a qualified psychiatrist or other expert, selected by the one proposing the examination, the examiner shall be permitted to have reasonable access to the defendant for the purpose of the examination."

This is expanded upon by the Revised Commission Comment to the original section 95-507:

> "Subdivision (b) [now subdivision (2)] allows both the prosecution and defense access to the defendant for purposes of psychiatric examinations. The sheriff or warden must make the defendant accessible for such examinations. The number of times the defendant must be made accessible for such examinations will rest in the discretion of the court."

Despite the fact this statute expressly gives the prosecution or the defense the right to an examination of defendant, defense counsel argue the title of section 95-507 restricts the benefit of the statute to defendant. The title is:

> "Determination of irresponsibility on basis of report -- access to defendant by psychiatrist of his own choice -- form of expert testimony when the issue of responsibility is tried."

Defendant's imaginative argument is that allowing a psychiatrist _of the state's choice_ to have access to defendant would violate Art. V, section 11(3), 1972 Montana Constitution, which states:

"Each bill, except general appropriation bills and bills for the codification and general revision of the laws, shall contain only one subject, clearly expressed in its title. If any subject is embraced in any act and is not expressed in the title, only so much of the act not so expressed is void."

This provision obviously refers to acts or bills, but does not refer to sections within each act. The title of the act creating section 95-507 is contained in the Laws of 1967, Chap. 196, and states:

"An Act Creating a Montana Code of Criminal Procedure to Codify and Generally Revise the Statutes Which Govern Court Procedures in Criminal Matters."

Section 95-507 was amended by the Laws of 1974, Chap. 120, entitled:

"AN ACT FOR THE CODIFICATION AND GENERAL REVISION OF THE LAWS RELATING TO THE DEPARTMENT OF INSTITUTIONS."

Patently these acts were codifications and general revisions and possessed adequate titles. The constitutional provision requiring acts to have complete titles has never been applied to the sections within each act, and defendant has cited no authority.

Alternatively, defendant argues section 95-507(2) allows not a substantive psychiatric examination but merely an inquiry into the procedure and credibility of the psychiatrist who reported under section 95-505. The plain language of section 95-507(2) and the Revised Commission Comment however, refer to a psychiatric examination of the defendant. The purpose of subsection (2) becomes clear in subsection (3) of section 95-507, which states in pertinent part:

"* * * both the prosecution and the defense may summon any other qualified psychiatrist [other than the reporting psychiatrist who was appointed under section 95-505] or other expert to testify, but no one who has not examined the defendant is competent to testify to an expert opinion with respect to the mental condition or responsibility of the defendant, as distinguished from the validity of the procedure followed by, or the general scientific propositions stated by another witness."

Clearly, any psychiatrist or other expert may testify regarding defendant's mental condition or responsibility provided the

psychiatrist has examined the defendant. Subsection (2) allows for such an examination by either the prosecution or the defense.

The remaining question is whether the trial court abused its discretion in refusing to allow an examination of defendant by a psychiatrist other than Dr. Alexander, since the number of additional examinations allowed under section 95-507 is within the discretion of the trial court. Revised Commission Comment, section 95-507, R.C.M. 1947. There are two main considerations:

1. Prior to examining defendant pursuant to stipulation of counsel, Dr. Alexander was hired by defendant to examine him for purposes of bail. This at least raises a conflict of interest.

2. The district court found Dr. Alexander's conclusions to be "disputable". If the conclusions of the only expert who has examined defendant are found to be disputable, it would appear to be sensible to allow at least one other psychiatrist to examine and either confirm or dispute the findings of the initial expert.

In light of these circumstances, we hold the district court abused its discretion in refusing to allow access to the defendant by a psychiatrist, in addition to Dr. Alexander.

The state also seeks reversal of the denial by the district court of the state's motion, made six days before the trial was to commence, to add to the Information the names of approximately twenty witnesses. The state alleges these witnesses were discovered after the original Information was filed and are necessary to prove the state's case in light of defendant's affirmative defense of mental disease or defect.

Section 95-1503(d), R.C.M. 1947 states:

"If the charge is by information or indictment, it shall include endorsed thereon, the names of the witnesses for the state, if known."

Also applicable is section 95-1803(a)(1)(2), R.C.M. 1947:

"In all criminal cases originally triable in district court the following rules shall apply:

-9-

"(a)    List of Witnesses:

"(1)    For the purpose of notice only and to prevent surprise, the prosecution shall furnish to the defendant and file with the clerk of the court at the time of arraignment, a list of witnesses intended to be called by the prosecution.  The prosecution may, any time after arraignment, add to the list the names of any additional witnesses, upon a showing of good cause.  The list shall include the names and addresses of the witnesses.

"(2)    The requirement of subsection (a)(1), of this section, shall not apply to rebuttal witnesses."

The proper procedure to be followed when the state moves to list additional witnesses is set out in State v. Klein, _____ Mont. _____, 547 P.2d 75, 77, 33 St.Rep. 283, 286:

"The court should first determine whether the need for the additional witnesses and the reason for their not being disclosed earlier is a 'substantial reason'.  It should then determine whether there is prejudice based on surprise and whether this surprise can be overcome by the granting of a continuance.  If the surprise element can be overcome by a continuance, then the witnesses should be endorsed and the continuance granted.  The spirit and intent of the law is that the names and addresses of potential witnesses should be disclosed as soon as they are known."

Here, the state claims and the defense does not deny the witnesses are material to the question of defendant's responsibility and they were unknown to the state at the time the Information was filed.  The defense claims prejudice in that on the one hand, it would have no time to prepare for trial if the witnesses were added, and on the other hand, if a continuance were granted, defendant would be prejudiced by an unnecessary delay.  Defendant cannot have it both ways.  If good cause to list the additional witnesses is shown, as here, and if any prejudice caused by defendant's surprise can be overcome by the granting of a continuance, the additional witnesses should be listed.  The district court's denial of the state's motion to list additional witnesses is reversed.

Finally, the state asks this Court, to rule on an issue collateral to those in its petition for a writ of supervisory

-10-

control for the reason that the issue might arise at trial, if the state was denied a psychiatric examination of defendant. This issue is not properly before the Court and the state's motion is denied.

In summary, the district court's denial of defendant's motion for acquittal is affirmed. The district court's denial of the state's motions for a psychiatric examination and to list additional witnesses on the Information is reversed. The cause is remanded to the district court with instructions to allow for a psychiatric examination of defendant and to allow the listing of the additional witnesses on the Information pursuant to the state's motion.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices